## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
## EASTERN DIVISION

| | | |
|---|---|---|
| MacroPoint, LLC, | ) | Case No. 1:15cv1002 |
| | ) | |
| Plaintiff, | ) | |
| | ) | Judge Patricia A. Gaughan |
| vs. | ) | |
| | ) | |
| FourKites, Inc. | ) | |
| | ) | |
| Defendant. | ) | |

---

### DEFENDANT FOURKITES, INC.'S MOTION TO DISMISS FIRST AMENDED COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AS A MATTER OF LAW

---

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, Defendant FourKites, Inc. respectfully moves this Court to dismiss Plaintiff's Complaint on the grounds that the patents at issue are directed to patent-ineligible subject matter.  The reasons and law supporting this Motion are more fully set forth in the attached Memorandum in Support, which is incorporated by reference herein.

Respectfully submitted,


/s/ Harold E. Farling
Harold E. Farling (0055891)
Thomas G. Kovach (0047213)
KOVACH & FARLING CO., LPA
925 Leader Building
526 Superior Avenue East
Cleveland, Ohio 44114-1401
(216) 357-3301
(216) 357-3304 (fax)
hfarling@kflpa.com
tkovach@kflpa.com


Gary E. Hood (Admitted Pro Hac Vice)
GHood@Polsinelli.com
Adam S. Weiss (Admitted Pro Hac Vice)
AWeiss@Polsinelli.com
Mark T. Deming (Admitted Pro Hac Vice)
MDeming@Polsinelli.com
POLSINELLI PC
161 North Clark Street, Suite 4200
Chicago, Illinois 60601
(312) 819-1900

Attorneys for Defendant


## CERTIFICATE OF SERVICE

A copy of the foregoing is being filed this 31st day of July, 2015 and is being served upon

counsel of record by operation of the Court's electronic filing system.


/s/ Harold E. Farling
One of the Attorneys for Defendant


-2-

**UNITED STATED DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| MacroPoint, LLC,<br><br>                    Plaintiff,<br><br>       v.<br><br>FourKites, Inc.,<br><br>                  Defendant. | Case No. 1:15cv1002<br><br>Judge Patricia A. Gaughan |

**MEMORANDUM IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**

**TABLE OF CONTENTS**

Introduction ........................................................................................................................1

Background ........................................................................................................................2

I.  MacroPoint's Patents ....................................................................................................2

    a.  The Alleged Invention ...........................................................................................2

    b.  The Claims of the '943 Patent ...............................................................................3

    c.  Claim 1 of the '943 Patent is Representative of All the Claims of the Patents-in-Suit .......6

Legal Standard ..................................................................................................................8

Argument ...........................................................................................................................9

I.  Judgment is Appropriate at this Stage of the Litigation ............................................9

    a.  Patentable Subject Matter is a Threshold Inquiry .................................................9

    b.  Courts Are Frequently Dismissing Patent Infringement Claims on § 101 Grounds ..........10

II.  The Claims of the Patents-in-Suit Are Directed to Unpatentable Abstract Ideas ...................13

    a.  Claims Directed to Abstract Ideas Are Invalid ...................................................13

        i.  The Patents-in-Suit Claim the Abstract Idea of Tracking Freight ....................... 14

        ii.  These Claims Are Analogous to the Invalid Claims in *Ultramercial* ................... 15

        iii.  Freight Monitoring Claims Have Been Held Invalid Before ............................... 15

    b.  The Claims of the Patents-in-Suit Do Not Add an Inventive Concept ...........................16

        i.  Implementing an Idea with a Computer is Not an Inventive Concept................. 16

        ii.  Including Generic Computer Components Does Not Provide an Inventive Concept ........ 17

        iii.  The Patents-in-Suit Do Not Include an Inventive Concept ................................. 18

    c.  Alternately Drafting "System" or "Machine" Claims Does Not Make Methods Patent Eligible ........19

III.  The Court Should Dismiss This Case on the Pleadings to Conserve Judicial Resources and the Parties' Resources ........20

Conclusion ........................................................................................................................21

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Auctions LLC v. eBay Inc.*,
    No. 3:13-cv-01612, 2015 WL 1415265 (S.D. Cal. Mar. 26, 2015) .........................................12

*Affinity Labs of Texas, LLC v. DIRECTV, LLC*,
    No. 6:15-cv-00030, 2015 WL 3764356 (W.D. Tex. July 7, 2015) .........................................11

*Alice Corp. v. CLS Bank Int'l*,
    134 S. Ct. 2347 (2014) ............................................................................................... *passim*

*Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*,
    56 F. Supp. 3d 813, 820 (E.D. Va. 2014) .........................................................................18

*Appistry, Inc. v. Amazon.com, Inc.*,
    No. 2:15-cv-00311, 2015 WL 4210890 (W.D. Wa. July 9, 2015) .........................................11

*Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*,
    133 S. Ct. 2107 (2013) ..................................................................................................10

*Bancorp Services, LLC v. Sun Life Assur. Co.*,
    687 F.3d 1266 (Fed. Cir. 2012) .......................................................................................17

*BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*,
    No. 3:14-cv-3942, 2015 WL 2341074 (N.D. Tex. May 15, 2015) .....................................8, 11

*Bilski v. Kappos*,
    561 U.S. 593 (2010) ..............................................................................................9, 13, 14

*Boar's Head Corp. v. DirectApps, Inc.*,
    No. 2:14-cv-01927, 2015 WL 4530596 (E.D. Cal. July 27, 2015) .......................................10

*In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*,
    774 F.3d 755 (Fed. Cir. 2014) .........................................................................................9

*buySAFE, Inc. v. Google, Inc.*,
    765 F.3d 1350 (Fed. Cir. 2014) ..................................................................................10, 18

*Carfax, Inc. v. Red Mountain Techs. LLC*,
    No. 1:14-cv-1590, slip op. (E.D. Va. Mar. 30, 2015) ....................................................8, 12

*Certusview Techs., LLC v. S & N Locating Services, LLC*,
    No. 2:13-cv-00346, 2015 WL 269427 (E.D. Va. Jan. 21, 2015) .........................................12

*CLS Bank Int'l v. Alice Corp.*,
    717 F.3d 1269 (Fed. Cir. 2013) .......................................................................................19

*Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*,
    776 F.3d 1343 (Fed. Cir. 2014) ..............................................................................8, 10, 14

*Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*,
   558 F. App'x 988 (Fed. Cir. 2014) ...................................................................17

*CyberSource Corp. v. Retail Decisions, Inc.*,
   654 F.3d 1366 (Fed. Cir. 2011).......................................................................14

*Dealertrack, Inc. v. Huber*,
   674 F.3d 1315 (Fed. Cir. 2012)..................................................................13, 14

*Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*,
   758 F.3d 1344 (Fed. Cir. 2014).......................................................................13

*Essociate, Inc. v. Clickbooth.com, LLC*,
   No. 8:13-cv-01886, 2015 WL 1428919 (C.D. Cal. Feb. 11, 2015) ..................12, 18

*FairWarning IP, LLC v. Iatric Systems, Inc.*,
   No. 8:14-cv-02685, 2015 WL 3883958 (M.D. Fla. June 24, 2015) ......................11

*Jericho Systems Corp. v. Axiomatics Inc.*,
   No. 3:14-cv-02281, 2015 WL 2165931 (N.D. Tex. May 7, 2015).........................11

*Joao Bock Transaction Systems, LLC v. Jack Henry & Associates, Inc.*,
   No. 12-1138, 2014 WL 7149400 (D. Del. Dec. 15, 2014) ...................................20

*Landmark Tech., LLC v. Assurant, Inc.*,
   No. 6:15-cv-00076, 2015 WL 4388311 (E.D. Tex. July 14, 2015) ......................11

*Market Track, LLC v. Efficient Collaborative Retail Marketing, LLC*,
   No. 1:14-cv-04957, 2015 WL 3637740 (N.D Ill. June 11, 2015).........................11

*Mayo Collaborative Services v. Prometheus Labs., Inc.*,
   132 S. Ct. 1289 (2012) ..........................................................................9, 10, 17

*Messaging Gateway Solutions LLC v. Amdocs, Inc.*,
   No. 1:14-cv-00732, 2015 WL 1744343 (D. Del. Apr. 15, 2015) .........................12

*MicroStrategy Inc. v. Apttus Corp.*,
   No. 3:15-cv-00021, 2015 WL 4425828 (E.D. Va. July 17, 2015).........................11

*The Money Suite Company v. 21st Century Insurance and Financial Services Inc.*,
   No. 1:13-cv-00984, 2015 WL 436160 (D. Del. Jan. 27, 2015) ............................12

*OIP Techs., Inc. v. Amazon.com, Inc.*,
   778 F.3d 1359 (Fed. Cir. 2015)......................................................................9, 13

*Open Text S.A. v. Box, Inc.*,
   No. 3:13-cv-04910 (N.D. Cal. Jan. 20, 2015)....................................................13

*Planet Bingo, LLC v. VKGS LLC*,
   576 Fed. App'x 1005 (Fed. Cir. 2014)...............................................................13

*Priceplay.com Inc. v. AOL Advertising Inc.*,
   No. 14-cv-92, 2015 WL 1246781 (D. Del. Mar. 18, 2015).................................8, 12

*Progressive Cas. Ins. Co. v. Safeco Ins. Co.*,
  No. 10-cv-1370, 2010 WL 4698576 (N.D. Ohio Nov. 10, 2010)............................................10

*In re Roslin Institute (Edinburgh)*,
  750 F.3d 1333 (Fed. Cir. 2014)...........................................................................................8

*Shortridge v. Foundation Construction Payroll Service, LLC d/b/a
  Payroll4Construction.com*,
  No. 3:14-cv-04850, 2015 WL 1739256 (N.D. Cal. Apr. 14, 2015).................................12, 18

*Smart Systems Innovations LLC v. Chicago Transit Authority*,
  No. 1:14-cv-08053, 2015 WL 4184486 (N.D. Ill. July 10, 2015) ..........................................11

*SmartGene, Inc. v. Advanced Biological Labs., SA*,
  555 Fed. App'x 950 (Fed. Cir. 2014)...............................................................................17, 18

*Thales Visionix Inc. v. United States*,
  No. 1:14-cv-00513, 2015 WL 4396610 (Ct. Cl. July 20, 2015) ............................................11

*In re TLI Communications LLC Patent Litigation*,
  No. 1:14-cv-00136, 2015 WL 627858 (E.D. Va. Feb. 6, 2015) ...........................................12

*Tuxis Techs. LLC v. Amazon.com Inc.*,
  No. 1:13-cv-01771, 2015 WL 1387815 (D. Del. Mar. 25, 2015) ..........................................12

*Ultramercial, Inc. v. Hulu, LLC*,
  772 F.3d 709 (Fed. Cir. 2014)....................................................................................*passim*

*Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA, LLC*,
  No. 1:13-cv-04417, 2015 WL 394273 (N.D. Ill. Jan. 29, 2015)............................................12

*Wireless Media Innovations, LLC v. Maher Terminals, LLC*,
  No. 2:14-cv-07004, 2015 WL 1810378 (D.N.J. Apr. 20, 2015).........................11, 15, 16, 20

## Statutes

35 U.S.C. § 101.......................................................................................................*passim*

## Other Authorities

Fed. R. Civ. P. 12(b)(6)....................................................................................7, 8, 14, 15

iv

## INTRODUCTION

This is precisely the type of case that the Supreme Court had in mind when it issued its *Alice* decision last year. In *Alice*, the Supreme Court made clear that software patents that claim nothing more than an abstract idea are not directed to patent-eligible subject matter, and should be held invalid.

Here, the patents-in-suit claim nothing more than the abstract idea of tracking freight using a computer. That is not patentable, and the use of a general purpose computer to implement the idea fails to supply the inventive concept necessary to transform this otherwise patent-ineligible idea into something patentable.

MacroPoint no doubt would like for this Court to assume that, by virtue of having the U.S. Patent & Trademark Office issue multiple patents, its assertion of these patents here is well-founded and that it is entitled to litigate the patents to jury verdict. As the Court well knows, however, a case like this stands to tie up judicial and party resources for years of protracted battle. Once the Court reviews the patents at this early stage—as the Supreme Court directed in *Alice*—it will no doubt realize that the claims of these asserted patents are not valid. As allowed by *Alice* and its progeny, the Court can and should take this opportunity to put an end to this case now, and avoid allowing judicial and party resources to be expended on a patent case that has no legitimate basis to proceed. Put simply, the Court can and should dispose of this matter at this early stage by granting the instant motion.[1]

---

[1] Before MacroPoint filed its amended complaint, in addition to this *Alice* challenge, FourKites also moved to dismiss this case for lack of personal jurisdiction. Although any connection by FourKites to Ohio is questionable at best, in the interest of conserving the Court's resources, and so that the parties can focus their efforts on the substantive merits of the case, FourKites withdraws its personal jurisdiction challenge and consents to jurisdiction in this court for the purposes of this case only.

1

# BACKGROUND

## I.      MacroPoint's Patents.

With the filing of MacroPoint's amended complaint, there are now five patents-in-suit: United States Patent Nos. 8,604,943 ("the '943 patent"); 9,070,295 ("the '295 patent"); 9,082,097 ("the '097 patent"); 9,082,098 ("the '098 patent"); and 9,087,313 ("the '313 patent") (collectively, "the patents-in-suit"). The patents-in-suit constitute one patent family. As a result, they all claim priority to a single patent, which happens to not be asserted in this case. They all have the same inventor. They all have the same figures and written description. Most importantly, though, they are all invalid, in their entirety, under 35 U.S.C. § 101.

### a.      The Alleged Invention.

The patents-in-suit allegedly describe "[a] system for providing location information of a vehicle [that] includes a communications interface and a correlation logic that correlates location information of a communications device to location of the vehicle." Ex. A, '943 patent at Abstract.[2] They recognize that "conventional systems for monitoring vehicle location" existed before MacroPoint's alleged invention. *Id.* at 1:37–38. As admitted in the patents-in-suit, these already-known systems included sophisticated implementations using technologies such as "radiolocation techniques including triangulation or multilateration methods that are capable of locating devices in a network." *Id.* at 1:49–51.

Such systems were so pervasive that "various governmental and business organizations have developed rules and guidelines to protect user privacy." *Id.* at 1:61–63. Indeed, the patents-in-suit even incorporated by reference the pre-existing International Association for the Wireless Telecommunications Industry's Best Practices and Guidelines for Location-Based Services (the

---

[2] Because each patent contains the same written description, only the column and line of the '943 patent will be cited unless otherwise indicated.

"CTIA Guidelines"), which provided industry standards for the proper use of tracking systems, including the claimed features of notice and consent—more than 2 years before the effective filing date of the patents-in-suit. *Id.* at 1:63–65. *See e.g.*, March 23, 2010 "CTIA Guidelines," attached hereto as Exhibit B, at page 1 ("The Guidelines rely on two fundamental principles: user notice and consent.").

> **b.**     **The Claims of the '943 Patent**.

The '943 patent claims "methods" and "systems" that, for the purposes of this motion, are not substantively different. Claim 1 is representative of all of the claims of all of the patents-in-suit:

> A computer implemented method for indicating location of freight carried by a vehicle, the method comprising:
>
> [a] **correlating** the freight to a communications device;
>
> [b] **receiving** a first signal including data representing a request for information regarding the location of the freight;
>
> [c] **transmitting** to the communications device a second signal including data that prompts an automated message to be communicated to a user of the communications device, the automated message representing a notice communicating to the user of the communications device that the location information of the communication device will be obtained;
>
> [d] **receiving** from the communications device a third signal including data indicative of consent from the user to the obtaining of the location information of the communications device;
>
> [e] **transmitting** a fourth signal to a location information provider, the fourth signal including data representing a request for location information of the communications device, wherein the location information provider corresponds to a party or device other than the communications device and the location information provider corresponds to at least one of:
>
> [e][i] a wireless service provider providing wireless service to the communications device,

3

[e][ii] a third party that obtains the location information of the communications device from the wireless service provider providing wireless service to the communications device, and

[e][iii] a party that has access to the location information of the communications device but is other than the wireless service provider or the third party that obtains the location information of the communications device from the wireless service provider;

[f] **receiving** a fifth signal from the location information provider, the fifth signal including data representing the location information of the communications device;

[g] **correlating** the location information of the communications device to the location of the freight based at least in part on the correlation between the freight and the communications device; and

[h] **transmitting** a sixth electronic signal including data representing the location of the freight.

Ex. A at 20:63–21:38 (emphasis added).

Claim 1 recites nothing more than using computers to send, receive, and correlate information. The dependent claims do not add anything that could be characterized as an inventive concept. Claim 2 simply specifies that the "location information" of claim 1 is obtained from something other than a GPS. *Id.* at 21:39–43. Claim 3 says the "location information" is obtained using one of a handful of previously known techniques. *Id.* at 21:44–51.

Claim 4 again recites correlating information. *Id.* at 21:52–55. Claim 5 specifies that one of the signals sent by the computer includes a telephone number. *Id.* at 21:56–58. Claim 6 says that in the course of transmitting one of the signals an application programming interface is exposed to the requesting party. *Id.* at 21:59–63. Finally, claim 7 says that the "requesting party" of claim 1 is one of a list of people potentially involved in the transportation of freight. *Id.* at 21:64–22:6.

4

Claims 8 through 12 pivot to "systems" rather than "methods," but they are essentially the same. Claim 8 recites:

A system for obtaining location of freight carried by a vehicle, the system comprising:

[a] a communications interface configured to communicate electronic signals including:

[a][i] a **first electronic signal** including data representing a request for the location of the freight, the first electronic signal received from a requesting party,

[a][ii] a **second electronic signal** including data representing a request for location information of a communications device not attached to the freight or the vehicle,

[a][iii] a **third electronic signal** including data representing the location information of the communications device, wherein the third electronic signal is received from a location information provider corresponding to a party or device other than the communications device and corresponding to one or more of:

[a][iii][1] a wireless service provider providing wireless service to the communications device,

[a][iii][2] a third party obtaining the location information from the wireless service provider providing wireless service to the communications device, and

[a][iii][3] a party that has access to the location information, but is other than the wireless service provider or the third party that obtains the location information from the wireless service provider; and

[a][iv] a **fourth electronic signal** including data representing the location of the freight;

[a][v] a **correlation logic** configured to correlate the location information of the communications device to the location of the freight;

[a][vi] a **validation logic** configured to identify the communications device at least in part by obtaining an identifier associated with the communications device; and

[a][vii] a **notification logic** configured to generate a fifth electronic signal including data that causes the communications device to generate a notice indicating to a user of the communications device that the location information of the communications device will be disclosed,

[b] wherein the communications interface is further configured to:

[b][i] **transmit** the fifth electronic signal to the communications device, and

[b][ii] **receive** from the communications device a sixth signal including data indicative of consent from the user to the obtaining of the location information of the communications device.

*Id.* at 22: 7–54 (emphasis added).

Claim 8 is nothing more than a "system" capable of doing the method claimed in claim 1, but the system consists of nothing more than the "signals" of information and computer "logic". And again, the dependent claims do not add anything that could be characterized as an inventive concept. Claim 9 again specifies that the "location information" of claim 8 is obtained from something other than a GPS. *Id.* at 22:55–58. Claim 10 again says the "location information" is obtained using one of a handful of previously known techniques. *Id.* at 22:59–67. Claim 11 once again says that the "requesting party" of the independent claim is one of a list of people potentially involved in the transportation of freight. *Id.* at 23:1–12. And claim 12 again recites correlating information. *Id.* at 12:13–17.

> **c.      Claim 1 of the '943 Patent is Representative of All the Claims of the Patents-in-Suit**.

All of the other claims of the patents-in-suit include essentially the same elements as claim 1 of the '943 patent. For example, claims 1 and 8 of the '295 patent again recite nothing more than using computers to send, receive, and correlate information. In fact, as the Patent Office recognized, those claims are "generally broader than the claims in" MacroPoint's

6

previous patents, including the '943 patent, thereby subjecting the patents to terminal disclaimers. *See* Ex. C at 3.

The dependent claims of the '295 patent also recite nothing more than the familiar elements. Claims 2 and 8 recite who provides location information. Ex. D, '295 patent at 21:35–47, 22:45–57. Claim 3 and 10 call for location information that uses GPS. *Id.* at 21:48–52, 22:58–62. Claims 4 and 11 call for location information that does not use GPS. *Id.* at 21:53–57, 22:63–67. Claims 5 and 12 say that transmitting one of the signals involves exposing an application programming interface to the requesting party. *Id.* at 21:58–63, 23:1–8. Claims 6 and 13 say that transmitting one of the signals involves interfacing with an exposed application programming interface. *Id.* at 21:64–22:3, 23:9–16. Finally, claims 7 and 14 recite again that the party to whom the location information will be sent is one of a list of people potentially involved in the transportation of freight. *Id.* at 22:4–13, 23:17–24.

As all of the claims of all of the patents-in-suit encompass the same subject matter, claim 1 of the '943 patent is representative and the Court can assess and decide the instant motion by focusing solely on this claim. Even if the Court were to determine claim 1 of the '943 patent was not representative, all of the claims of the patents-in-suit recycle some combination of seven basic components, each of which are addressed herein: (1) sending / receiving; (2) correlating; (3) using or not using GPS; (4) exposing and/or interfacing with an exposed application programming interface; (5) specifying who is the location information requester; (6) specifying who provides the location information; and (7) displaying a representation of the location information. *See* Ex. E. None of these components, alone or in any combination, supply an inventive concept.

## LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure provides for dismissal where the plaintiff "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). Whether a patent is directed to patent-eligible subject matter under 35 U.S.C. § 101 is a question of law. *In re Roslin Institute (Edinburgh)*, 750 F.3d 1333, 1335 (Fed. Cir. 2014). As such, claims brought based on a patent directed to unpatentable subject matter may be dismissed pursuant to Rule 12(b)(6). *See, e.g., Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.*, 776 F.3d 1343 (Fed. Cir. 2014) (affirming Rule 12(b)(6) dismissal on § 101 grounds); *BASCOM Global Internet Services, Inc. v. AT&T Mobility LLC*, No. 3:14-cv-3942, 2015 WL 2341074 (N.D. Tex. May 15, 2015) (granting motion to dismiss on § 101 grounds); *Carfax, Inc. v. Red Mountain Techs., LLC*, No. 1:14-cv-1590, slip op. attached hereto as Exhibit F (E.D. Va. Mar. 30, 2015) (same); *Priceplay.com Inc. v. AOL Advertising Inc.*, No. 14-cv-92, 2015 WL 1246781 (D. Del. Mar. 18, 2015) (same).

Patent-eligible subject matter does not include laws of nature, natural phenomena, or abstract ideas. *Alice Corp. v. CLS Bank Int'l*, 134 S. Ct. 2347, 2354 (2014). In *Alice,* the Supreme Court made clear that patent claims directed to such concepts are invalid unless they add something that transforms the nature of the claims into a patent-eligible application of the concept. *Id.* at 2355. As the Supreme Court stated, to assess whether a patent claims unpatentable subject matter, a court must determine whether the claims at issue are directed to one of the patent-ineligible concepts, *i.e.* laws of nature, natural phenomena, or abstract ideas. *Id.* If so, the court must then determine whether any additional elements transform the nature of the claims into a patent-eligible application. *Id.* This is referred to as the search for an "inventive concept." *Alice Corp.*, 134 S. Ct. at 2355.

8

In deciding the instant motion, the Court should "consider the elements of each claim both individually and as an ordered combination to determine whether the additional elements transform the nature of the claim into a patent-eligible application." *See id.* When a claim "as an ordered combination adds nothing to the laws of nature that is not already present when the steps are considered separately," such as when it simply recites an idea "as performed by a generic computer," it is invalid. *Id.* at 2359; *see also Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S. Ct. 1289, 1298 (2012).

Since the Supreme Court's *Alice* decision, the Federal Circuit and various district courts have been asked with increasing frequency to review patents and determine the extent to which the patent claims are directed to ineligible abstract ideas. *See, e.g., Ultramercial, Inc. v. Hulu, LLC*, 772 F.3d 709, 714 (Fed. Cir. 2014). Courts in these cases have found a variety of patent claim types directed to ineligible subject matter, and accordingly dismissed associated cases alleging infringement. The same is the case here, as the patents-in-suit are precisely the type of software patents that Courts are now routinely holding invalid on § 101 grounds.

## ARGUMENT

I.    **Judgment is Appropriate at this Stage of the Litigation**.

    a.    **Patentable Subject Matter is a Threshold Inquiry**.

Subject-matter eligibility is a "threshold test," that should be resolved at the first opportunity. *Bilski v. Kappos*, 561 U.S. 593, 602 (2010). As Judge Mayer said in his concurring opinion in *OIP Techs., Inc. v. Amazon.com, Inc.*, 778 F.3d 1359 (Fed. Cir. 2015):

> Addressing 35 U.S.C. § 101 at the outset not only conserves scarce judicial resources and spares litigants the staggering costs associated with discovery and protracted claim construction litigation, it also works to stem the tide of vexatious suits brought by the owners of vague and overbroad business method patents.

*Id.* at 1364.

9

This is the appropriate time to make this determination because patent eligibility under § 101 is a question of law. *In re BRCA1- & BRCA2-Based Hereditary Cancer Test Patent Litig.*, 774 F.3d 755, 759 (Fed. Cir. 2014). The Federal Circuit has repeatedly recognized the propriety of disposing of a case on § 101 grounds at the pleading state. *See Ultramercial*, 772 F.3d at 711-12 (affirming dismissal of case involving distributing content on the Internet on a 12(b)(6) motion); *Content Extraction*, 776 F.3d at 1351 (affirming dismissal of case involving claims for recognizing and storing data on a 12(b)(6) motion).

### b. Courts Are Frequently Dismissing Patent Infringement Claims on § 101 Grounds.

Courts may have once questioned whether it was appropriate to hold patents invalid on a motion to dismiss, but that is no longer the case. Indeed, this Court denied such a motion in November 2010. *See Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, No. 10-cv-1370, 2010 WL 4698576 (N.D. Ohio Nov. 10, 2010). But the patent law has changed significantly since then. When this Court issued that prior decision, the "only one case in support of [the] argument that finding a patent to be invalid is proper on a 12(b)(6) motion" was the district court decision in *Ultramercial*. *Id.* at *4. Years later, after a remand from the Supreme Court in *Ultramercial*, however, that decision was ultimately upheld by the Federal Circuit. *See Ultramercial*, 772 F.3d at 714.

Since then, in fact, the Supreme Court and Federal Circuit have issued landmark § 101 decisions, including *Alice Corp. Pty. v. CLS Bank Int'l*, 134 S. Ct. 2347 (2014); *Ass'n for Molecular Pathology v. Myriad Genetics, Inc.*, 133 S. Ct. 2107 (2013); *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350 (Fed. Cir. 2014); *Mayo Collaborative Servs. v. Prometheus Labs., Inc.*, 132 S. Ct. 1289 (2012). In the last few months alone, the following district court cases have been

dismissed or had judgment entered on the pleadigns because the asserted patents claimed patent

ineligible subject matter:

1.     *Boar's Head Corp. v. DirectApps, Inc.*, No. 2:14-cv-01927, 2015 WL 4530596 (E.D. Cal. July 27, 2015) (granting motion to dismiss for patent directed to a computerized system of tracking and aggregating caller information).

2.     *Thales Visionix Inc. v. United States*, No. 1:14-cv-00513, 2015 WL 4396610 (Ct. Cl. July 20, 2015) (granting judgment on the pleadings for patent directed to "a system comprised of two inertial sensors and an element adapted to receive signals from the sensors").

3.     *MicroStrategy Inc. v. Apttus Corp.*, No. 3:15-cv-00021, 2015 WL 4425828 (E.D. Va. July 17, 2015) (granting motion to dismiss for patents directed to computer software platforms that provide business intelligence and report generation).

4.     *Landmark Tech., LLC v. Assurant, Inc.*, No. 6:15-cv-00076, 2015 WL 4388311 (E.D. Tex. July 14, 2015) (recommending granting motion to dismiss for patent directed to storing, interrelating, searching, and retrieving textual and graphical information).

5.     *Smart Systems Innovations LLC v. Chicago Transit Authority*, No. 1:14-cv-08053, 2015 WL 4184486 (N.D. Ill. July 10, 2015) (granting motion for judgment on the pleadings for patents directed to, among other things, bankcard terminals, transit systems, a methods of collecting fares).

6.     *Appistry, Inc. v. Amazon.com, Inc.*, No. 2:15-cv-00311, 2015 WL 4210890 (W.D. Wa. July 9, 2015) (granting motion for judgment on the pleadings for patents directed to project management and distributed processing).

7.     *Affinity Labs of Texas, LLC v. DIRECTV, LLC*, No. 6:15-cv-00030, 2015 WL 3764356 (W.D. Tex. July 7, 2015) (adopting recommendation to grant motion to dismiss for patent directed to broadcast systems involving cell phones and downloadable applications).

8.     *FairWarning IP, LLC v. Iatric Systems, Inc.*, No. 8:14-cv-02685, 2015 WL 3883958 (M.D. Fla. June 24, 2015) (granting motion to dismiss for patent directed to detecting fraud and/or misuse in a computer environment based on analyzing data).

9.     *HealthTrio, LLC v. Aetna, Inc.*, No. 1:12-cv-03229, 2015 WL 3883958 (D. Col. June 24, 2015) (granting motion to dismiss for patent directed to analyzing records of human activity to detect suspicious behavior).

10.     *Market Track, LLC v. Efficient Collaborative Retail Marketing, LLC*, No. 1:14-cv-04957, 2015 WL 3637740 (N.D Ill. June 11, 2015) (granting motion for judgment on the pleadings for patent directed to identifying, organizing, and presenting information).

11.     *BASCOM Global Internet Services, Inc. v. AT&T Inc.*, No. 3:14-cv-03942, 2015 WL 2341074 (N.D. Tex. May 15, 2015) (granting motion to dismiss for patent directed to a method and system for filtering Internet content).

12.     *Jericho Systems Corp. v. Axiomatics Inc.*, No. 3:14-cv-02281, 2015 WL 2165931 (N.D. Tex. May 7, 2015) (grating motion for judgment on the pleadings for patent directed to determining authority to access certain information).

13.     *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, No. 2:14-cv-07004, 2015 WL 1810378 (D.N.J. Apr. 20, 2015) (granting motion to dismiss for patent directed to monitoring and tracking shipping containers).

14.     *Messaging Gateway Solutions LLC v. Amdocs, Inc.*, No. 1:14-cv-00732, 2015 WL 1744343 (D. Del. Apr. 15, 2015) (granting motions for judgment on the pleadings for patents directed to translating messages between systems that use different computer languages).

15.     *Shortridge v. Foundation Construction Payroll Service, LLC d/b/a Payroll4Construction.com*, No. 3:14-cv-04850, 2015 WL 1739256 (N.D. Cal. Apr. 14, 2015) (granting motion for judgment on the pleadings for patent directed to organization of data in a relational database to generate various report).

16.     *Carfax, Inc. v. Red Mountain Techs., LLC*, No. 1:14-cv-01590, slip op. attached hereto as Exhibit F (E.D. Va. Mar. 30, 2015) (granting motion to dismiss patents directed to determining insurability of a vehicle and underwriting an insurance policy).

17.     *Advanced Auctions LLC v. eBay Inc.*, No. 3:13-cv-01612, 2015 WL 1415265 (S.D. Cal. Mar. 26, 2015) (granting motion for judgment on the pleadings for patent directed to computer-based Internet auction).

18.     *Tuxis Techs. LLC v. Amazon.com Inc.*, No. 1:13-cv-01771, 2015 WL 1387815 (D. Del. Mar. 25, 2015) (granting motion to dismiss for patent directed to upselling by using a computer to provide offers and receiving acceptances in real time to effect a transaction).

19.     *Priceplay.com Inc. v. AOL Advertising Inc.*, No. 1:14-cv-00092, 2015 WL 1246781 (D. Del. Mar. 18, 2015) (granting motion to dismiss for patent directed to performing sales transactions over the Internet).

20.     *Essociate, Inc. v. Clickbooth.com, LLC*, No. 8:13-cv-01886, 2015 WL 1428919 (C.D. Cal. Feb. 11, 2015) (granting motion for judgment on the pleadings for patent directed to receiving and tracking referrals from referral sources on the Internet).

21.     *In re TLI Communications LLC Patent Litigation*, No. 1:14-cv-00136, 2015 WL 627858 (E.D. Va. Feb. 6, 2015) (granting motions to dismiss patent directed to methods and apparatuses for taking, organizing, classifying, and storing digital photographs).

22.     *Vehicle Intelligence and Safety LLC v. Mercedes-Benz USA, LLC*, No. 1:13-cv-04417, 2015 WL 394273 (N.D. Ill. Jan. 29, 2015) (granting motion for judgment on the pleadings for patent directed to testing operators of any kind of moving equipment for any kind of physical or mental impairment).

23.     *The Money Suite Company v. 21st Century Insurance and Financial Services Inc.*, No. 1:13-cv-00984, 2015 WL 436160 (D. Del. Jan. 27, 2015) (granting motion to dismiss for

patent direct to generating price quotes for various types of financial products based on a given set of criteria).

24.     *Certusview Techs., LLC v. S & N Locating Services, LLC*, No. 2:13-cv-00346, 2015 WL 269427 (E.D. Va. Jan. 21, 2015) (granting motion for judgment on the pleadings for patents directed to computer systems that provide information about buried infrastructure to excavators).

25.     *Open Text S.A. v. Box, Inc.*, No. 3:13-cv-04910 (N.D. Cal. Jan. 20, 2015) (granting motion for judgment on the pleadings for patents directed to systems providing workplace collaboration through the Internet or an intranet using technology like browsers, servers, and networks).

**II.     The Claims of the Patents-in-Suit Are Directed to Unpatentable Abstract Ideas**.

Section 101 defines the four categories of subject matter eligible for patent protection: "any new and useful process, machine, manufacture, or composition of matter." 35 U.S.C. § 101. The Supreme Court has long recognized, and recently affirmed, an exception to this provision: "Laws of nature, natural phenomena, and abstract ideas are not patentable." *Alice Corp.*, 134 S. Ct. at 2354. A claim that, on its face, falls within one of the four statutory categories is nevertheless ineligible if it encompasses any of the excepted categories. *Digitech Image Techs., LLC v. Electronics for Imaging, Inc.*, 758 F.3d 1344, 1350 (Fed. Cir. 2014).

**a.     Claims Directed to Abstract Ideas Are Invalid**.

Where an alleged invention is nothing more than "a method of organizing human activity," it is an abstract idea. *Alice Corp.*, 134 S. Ct. at 2356 (finding "intermediated settlement" an abstract idea); *see also Planet Bingo, LLC v. VKGS LLC*, 576 Fed. App'x 1005, 1008 (Fed. Cir. 2014) (finding "methods and systems for 'managing a game of Bingo'" and for "solving a tampering problem and also minimizing other security risks during bingo ticket purchases" were abstract ideas).

The Supreme Court has made clear, in fact, that "fundamental economic practice[s]" and known methods of doing business are also abstract ideas. *See Alice Corp.*, 134 S. Ct. at 2356

(intermediated settlement); *Bilski*, 561 U.S. at 611–13 (hedging risk); *Dealertrack, Inc. v. Huber*, 674 F.3d 1315, 1331–33 (Fed. Cir. 2012) (finding invalid computerized methods for managing credit applications are directed to the abstract idea of a "clearinghouse"); *see also OIP Techs., Inc.*, 788 F.3d at 1362–63 (collecting Federal Circuit cases). In all these cases, the subject patent claims were found to be subject-matter ineligible. *See Bilski*, 561 U.S. at 611-13; *Dealertrack*, 674 F.3d at 1333–34.

### i.     The Patents-in-Suit Claim the Abstract Idea of Tracking Freight.

The first step for the Court is to "determine whether the claims at issue are directed to a patent-ineligible concept," such as an abstract idea. *Alice*, 134 S. Ct. at 2355–56. While the claims may appear complex on their face, the goal of this step is to identify the "basic concept," or "heart" of the claims. *See id.* (holding the claims at issue were "drawn to the concept of intermediated settlement"); *id.* at 2356 (stating that claims in *Bilski* described "the basic concept of hedging, or protecting against risk"); *Content Extraction*, 776 F.3d at 1347 (reducing claim elements to the "basic concept of data recognition and storage"); *Ultramercial*, 772 F.3d at 714-15 (determining "heart" of patent-in-suit was abstract idea).

The claims of the patents-in-suit are directed to the basic idea of tracking freight: (1) receiving a request for the location of freight; (2) asking the truck in possession of that freight where it is; and (3) reporting the location of the truck. The claims "use" a computer, but they are nothing more than a method of organizing a prior-existing, basic human activity. *See, e.g.,* Ex. A at 22:7–54. Without more, the claims are invalid. *See CyberSource Corp. v. Retail Decisions, Inc.*, 654 F.3d 1366, 1372-73 (Fed. Cir. 2011) ("[A] method that can be performed by human thought alone is merely an abstract idea and is not patent eligible under § 101.").

###### ii.    These Claims Are Analogous to the Invalid Claims in *Ultramercial.*

The claims here are like the claims invalidated by the Federal Circuit in *Ultramercial*, which was on appeal from a Rule 12(b)(6) dismissal. Claim 1 of the '934 patent, which is representative of all the claims of the patents-in-suit, essentially consists of three elements: (1) receiving signals; (2) transmitting signals; (3) and correlating information. The Federal Circuit found claims consisting of similar elements invalid under § 101 in *Ultramercial*. There, the claims recited "receiving . . . a request," "providing a product list on an Internet website," and "selecting a sponsor message to be associated with . . . media products." *See Ultramercial*, 772 F.3d at 712. Receiving a request, providing information over the Internet, and associating messages with products are no different than receiving signals, transmitting signals, and correlating location information. In each case the claims are directed to nothing more than a collection of steps for sending, receiving, and correlating information—*i.e.*, directed to an abstract idea.

###### iii.    Freight Monitoring Claims Have Been Held Invalid Before.

Other courts have recently addressed freight monitoring claims like those here, and dismissed these cases on Rule 12(b)(6) motions. For example, in *Wireless Media Innovations, LLC v. Maher Terminals, LLC*, Nos. 14-7004; 14-7006, 2015 WL 1810378 (D. Del. Apr. 20, 2015), the district court invalidated two freight monitoring patents. The patents there claimed methods "for monitoring location and load status of shipping containers" and "[a] computerized system for monitoring and recording location and load status of shipping containers." *Id.* at *2. The district court found the claims were all directed "to the same underlying abstract idea: monitoring locations, movements, and load status of shipping containers within a container receiving yard, and storing, reporting and communicating this information in various forms." *Id.*

at *7. Just like in *Wireless Media Innovations,* the claims of the patents-in-suit here are directed to monitoring locations and movements, storing them, and reporting or communicating them—*i.e.*, directed to the abstract idea of tracking freight. Just as in that case, the claims here are invalid.

> **b.** **The Claims of the Patents-in-Suit Do Not Add an Inventive Concept**.

For the second part of the test, the Court looks to whether the claims include "something more" that makes them patentable under § 101. Claims directed to an abstract idea are patent eligible only if they include "additional elements [that] 'transform the nature of the claim' into a patent-eligible application." *Alice Corp.*, 134 S. Ct. 2355. To be found patent eligible, "[a] claim that recites an abstract idea must include 'additional features' . . . [that are] <u>more</u> than 'well-understood, routine, conventional activity.'" *Ultramercial*, 72 F.3d at 715 (emphasis added).

> **i.** **Implementing an Idea with a Computer is Not an Inventive Concept**.

Simply adding computers and databases to the process is insufficient to transform the abstract idea into patent eligible subject matter. *Alice Corp.*, 134 S. Ct. at 2358 ("Stating an abstract idea while adding the words 'apply it' is not enough for patent eligibility."). The claims of the patents-in-suit here, however, are nothing more than an effort to patent the performance of a task that human beings have always done.

In the past, merchants or shippers tracked freight with paper logs or other written records. Such tasks are now done on computer, but they remain at their core the basic and fundamental idea of tracking freight. This is not an inventive concept. "[T]he performance of a long-known abstract idea 'from the pre-Internet world' . . . using a conventional computer" is not patent-eligible subject matter. *Wireless Media Innovations*, 2015 WL 1810378 at *11 (finding freight monitoring claims invalid where they were "not tied to any particular novel machine or

16

apparatus, only a general purpose computer, general communication devices, and general vehicles.").

### ii. Including Generic Computer Components Does Not Provide an Inventive Concept.

Introducing into a patent's claims a general purpose computer, consisting of the most basic building blocks—a processor, a memory, I/O devices—and used for unremarkable, routine steps like storing and reading information, does not make an abstract idea patent-eligible subject matter. *See Ultramercial*, 72 F.3d at 716 (holding routine steps like data-gathering, updating records, and restricting access based on performance of conditions are insufficient to make claim patent eligible). A claimed computer may make the application of an idea faster or more efficient, but even that does not make the claims patent eligible. *Bancorp Services, LLC v. Sun Life Assur. Co.*, 687 F.3d 1266, 1278 (Fed. Cir. 2012) ("[T]he fact that the required calculations could be performed more efficiently via a computer does not materially alter the patent eligibility of the claimed subject matter."); *see also Mayo*, 132 S. Ct. at 1301 ("[S]imply implementing a mathematical principle on a physical machine, namely a computer, was not a patentable application of that principle.").

"Adding routine additional steps such as updating an activity log, requiring a request from the consumer to view the ad, restrictions on public access, and use of the Internet does not transform an otherwise abstract idea into patent-eligible subject matter." *Ultramercial*, 772 F.3d at 716; *see also Cyberfone Sys., LLC v. CNN Interactive Grp., Inc.*, 558 F. App'x 988, 992 (Fed. Cir. 2014) (holding ineligible under § 101 claims directed to the abstract idea of "using categories to organize, store, and transmit information"). Mere "data-gathering steps . . . add nothing of practical significance to the underlying abstract idea." *Ultramercial*, 772 F.3d at 716.

17

As the Federal Circuit said in *SmartGene, Inc. v. Advanced Biological Labs., SA*, 555 Fed. App'x 950 (Fed. Cir. 2014) (non-precedential):

> Section 101 did not embrace a process defined simply as using a computer to perform a series of mental steps that people, aware of each step, can and regularly do perform in their heads. . . . [S]ection 101 covers neither 'mental processes'—associated with or as part of a category of 'abstract ideas'—nor processes that merely invoke a computer and its basic functionality for implementing such mental processes, without specifying even arguably new physical components or specifying processes defined other than by the mentally performable steps.

*Id.* at 555 Fed. App'x at 954.

### iii.    The Patents-in-Suit Do Not Include an Inventive Concept.

The claims of the patents-in-suit do not include the "something more" that would transform them into patent-eligible inventions. *See Alice*, 134 S. Ct. at 2354 (quoting *Mayo*, 132 S. Ct. at 1303). The claims of the patents-in-suit primarily consist of "receiving" and "transmitting" signals. Signals are nothing more than information, and sending them back and forth cannot supply an inventive concept. *buySAFE, Inc. v. Google, Inc.*, 765 F.3d 1350, 1355 (Fed. Cir. 2014) (affirming judgment of invalidity entered on the pleadings and observing that "a computer receiv[ing] and send[ing] . . . information over a network—with no further specification—is not even arguably inventive.").

The recitation of "correlating" steps or "correlation logic" also does not provide an inventive concept. Correlating data is, itself, an abstract idea. *See Amdocs (Israel) Ltd. v. Openet Telecom, Inc.*, 56 F. Supp. 3d 813, 820 (E.D. Va. 2014) (finding "the concept of correlating two network accounting records to enhance the first record" an abstract idea and granting judgment on the pleadings); *see also Essociate, Inc. v. Clickbooth.com, LLC*, No. 13-cv-1886, 2015 WL 1428919 at *8 (C.D. Cal. Feb. 11, 2015) (granting judgment on the pleadings for claims directed to receiving and tracking referrals from referral sources on the Internet, which included steps of

18

correlating identification codes of website affiliates and webmasters). Using basic computer components, such as a relational database, to perform the correlation does not supply an inventive concept. *Shortridge v. Found. Constr. Payroll Serv., LLC*, No. 14–cv–04850–JCS, 2015 WL 1739256, at *12 (N.D.Cal. Apr. 14, 2015) ("[R]elational databases are well-understood, routine, conventional" and using them "to store and organize labor data . . . does no more than require a generic computer to perform generic computer functions.").

Claim 1 is therefore invalid, and as a representative claim, the Court should invalidate all of the claims of all of the patents-in-suit. And even if claim 1 is not representative, all of the claims of the patents-in-suit recycle some combination of seven basic components: (1) sending / receiving; (2) correlating; (3) using or not using GPS; (4) exposing and/or interfacing with an exposed application programming interface; (5) specifying to whom location information is sent; (6) specifying from whom location information is obtained; and (7) displaying a representation of the location information. None of these components, alone or in any combination, supply an inventive concept. Therefore all of the claims of all of the patents-in-suit are invalid.

> **c.    Alternately Drafting "System" or "Machine" Claims Does Not Make Methods Patent Eligible.**

The conclusion that the method claims of the patents-in-suit are invalid under 35 U.S.C. § 101 holds with equal force for the "system" or "machine" claims. *Alice Corp.*, 134 S. Ct. at 2360 ("This Court has long 'warn[ed] . . . against' interpreting § 101 'in ways that make patent eligibility 'depend simply on the draftsman's art.'"); *CLS Bank Int'l v. Alice Corp.*, 717 F.3d 1269, 1289 (Fed. Cir. 2013) ("[A]pplying a presumptively different approach to system claims generally would reward precisely the type of clever claim drafting that the Supreme Court has repeatedly instructed us to ignore"). Just as in *Alice,* the system and machine claims of the patents-in-suit are "no different from the method claims in substance. The method claims recite

the abstract idea implemented on a generic computer; the system claims recite a handful of generic computer components configured to implement the same idea." *See Alice Corp.*, 134 S. Ct. at 2360.

The result, then, is the same—the system and machine claims fall just as the method claims do. *See Joao Bock Transaction Systems, LLC v. Jack Henry & Associates, Inc.*, No. 12-1138, 2014 WL 7149400, at *8 (D. Del. Dec. 15, 2014) (finding that "[t]he fact that the asserted claims are apparatus claims, not method claims, does not change the court's analysis"); *see also Wireless Media Innovations*, 2015 WL 1810378 at *2–4 (applying § 101 analysis to claims variously drafted as "methods" and "computerized systems").

## III.    The Court Should Dismiss This Case on the Pleadings to Conserve Judicial Resources and the Parties' Resources.

FourKites is an innovative and entrepreneurial company that respects the intellectual property rights of third parties and seeks an expeditious examination of the merits of the case—MacroPoint's claims should be dismissed on the pleadings. *See Ultramercial*, 772 F.3d at 718. MacroPoint filed this lawsuit without any prior notice to FourKites and instead of serving the complaint, MacroPoint immediately and continuously blanketed members of the trucking and freight industry—including FourKites' current and prospective partners and customers—with threatening letters that referenced the unserved lawsuit.  MacroPoint's tactics follow a similar pattern to a case it brought a year ago, Case No. 14-cv-312-JG, *MacroPoint, LLC v. Salebug.com, LLC et al*. (N.D. Ohio), *see* Ex. G, which culminated in a counterclaim for tortious interference, *id.* at Doc. No. 6 (the case did not reach the merits nor examine invalidity under *Alice*).

Even if this case were to proceed, FourKites does not infringe the patents-in-suit, and the claims of the patents-in-suit are invalid as anticipated and obvious.  Remote tracking systems like that claimed by MacroPoint were well-known in the industry and publicly available for years prior to the filing of the patents-in-suit.[3]  Regardless, because it is clear that the patents-in-suit are invalid under *Alice*, the parties need not address these issues in detail at this time.

## CONCLUSION

WHEREFORE, Defendant FourKites, Inc. requests that the Court enter an order finding all the claims of United States Patent Nos. 8,604,943; 9,070,295; 9,082,097; 9,082,098; and 9,087,313 invalid as directed to patent ineligible subject matter under 35 U.S.C. § 101 and dismissing MacroPoint, LLC's Complaint with prejudice; and for all other relief the Court finds just and appropriate.


Dated: July 31, 2015

<div style="margin-left:40%">

Respectfully submitted,
/s/ Harold E. Farling
Harold E. Farling (0055891)
Thomas G. Kovach (0047213)
KOVACH & FARLING CO., LPA
925 Leader Building
526 Superior Avenue East
Cleveland, Ohio 44114-1401
(216) 357-3301
(216) 357-3304 (fax)

</div>

---

[3] Just one such prior art example, among many other references, is the uFollowit Voice Proof of Delivery & Tracking Service, which dates to at least as early as 2008. uFollowit was identified to MacroPoint during the Salebug.com litigation, but it appears that MacroPoint failed to disclose such materials to the Patent Office during its prosecution of the recently-issued patents-in-suit. The apparent failure to disclose these—and perhaps other—materials would render all of MacroPoint's patents unenforceable under the doctrine of infectious unenforceability. *See Agfa Corp. v. Creo Products Inc.*, 451 F.3d 1366, 1379 (Fed. Cir. 2006) (explaining that infectious unenforceability occurs when inequitable conduct renders unenforceable claims in a related application).

hfarling@kflpa.com
tkovach@kflpa.com

Gary E. Hood (Admitted Pro Hac Vice)
GHood@Polsinelli.com
Adam S. Weiss (Admitted Pro Hac Vice)
AWeiss@Polsinelli.com
Mark T. Deming (Admitted Pro Hac Vice)
MDeming@Polsinelli.com
POLSINELLI PC
161 North Clark Street, Suite 4200
Chicago, Illinois 60601
(312) 819-1900

*Attorneys for Defendant*
*FourKites, Inc.*

## <u>CERTIFICATION</u>

This case has not been assigned to a track.  On July 31, 2015, the Court granted permission for this Memorandum to be up to thirty pages in length.  In compliance with Local Civil Rule 7.1(f), the undersigned hereby certifies that the length of this Memorandum complies with the Court's Order.

/s/ Harold E. Farling
Harold E. Farling (0055891)

22