UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **MacroPoint, LLC,** | ) | **CASE NO. 1:15 CV 1002** |
| | ) | |
| **Plaintiff,** | ) | **JUDGE PATRICIA A. GAUGHAN** |
| | ) | |
| Vs. | ) | |
| | ) | |
| **FourKites, Inc.,** | ) | **Memorandum of Opinion and Order** |
| | ) | |
| **Defendant.** | ) | |

**INTRODUCTION**

This matter is before the Court upon Defendant FourKites, Inc.'s Motion to Dismiss First Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted as a Matter of Law (Doc. 18). This is a patent infringement action. For the reasons that follow, the motion is GRANTED.

**FACTS**

Five patents are at issue in this lawsuit. The patents are directed at "a system for providing location information of a vehicle [that] includes a communications interface and a

1

correlation logic that correlates location information of a communications device to location of the vehicle." Claim 1 in the '943 patent is representative of the claims of the patents-in-suit and provides as follows:[1]

> A computer implemented method for indicating location of freight carried by a vehicle, the method comprising:
>
> [a] correlating the freight to a communications device;
>
> [b] receiving a first signal including data representing a request for information regarding the location of the freight;
>
> [c] transmitting to the communications device a second signal including data that prompts an automated message to be communicated to a user of the communications device, the automated message representing a notice communicating to the user of the communications device that the location information of the communication device will be obtained;
>
> [d] receiving from the communications device a third signal including data indicative of consent from the user to the obtaining of the location information of the communications device;
>
> [e] transmitting a fourth signal to a location information provider, the fourth signal including data representing a request for location information of the communications device, wherein the location information provider corresponds to a party or device other than the communications device and the location information provider corresponds to at least one of:
>
>> [e][i] a wireless service provider providing wireless service to the communications device,

---

[1] Plaintiff does not dispute that Claim 1 is representative of the claims of the patents-in-suit. Plaintiff instead argues that defendant fails to address all of the 94 claims across all five patents-in-suit. Plaintiff is incorrect. If one claim is a representative claim, courts need not address each claim individually. *See, Content Extraction and Transmission, LLC v. Wells Fargo National Bank Association*, 776 F.3d 1343, 1348 (Fed. Cir. 2014); *In re TLI Communications*, 2015 WL 627858 at * 9 (Feb. 6, 2015).

[e][ii] a third party that obtains the location information of the communications device from the wireless service provider providing wireless service to the communications device, and

[e][iii] a party that has access to the location information of the communications device but is other than the wireless service provider or the third party that obtains the location information of the communications device from the wireless service provider;

[f] receiving a fifth signal from the location information provider, the fifth signal including data representing the location information of the communications device;

[g] correlating the location information of the communications device to the location of the freight based at least in part on the correlation between the freight and the communications device; and

[h] transmitting a sixth electronic signal including data representing the location of the freight.

The '943 patent issued on December 10, 2013. The remaining patents issued more than a year after the Supreme Court decided *Alice Corp. Pty. Ltd. v. CLS Bank International*, 134 S.Ct. 2347 (2014). Defendant moves to dismiss the case on the grounds that the patents-in-suit are invalid in light of *Alice*. Plaintiff opposes the motion.

**ANALYSIS**

1. Propriety of a motion to dismiss

As an initial matter, the Court finds that it is procedurally proper to address defendant's arguments concerning invalidity based on patent-eligibility at the 12(b)(6) stage. *See, Content Extraction and Transmission, LLC v. Wells Fargo National Bank Association*, 776 F.3d 1343 (Fed. Cir. 2014). This is especially so in light of the fact that plaintiff does not argue that claim construction is necessary for a resolution of the instant dispute. In addressing defendant's arguments, the Court will presume that the patents are valid and grant the motion only if defendant is able to show invalidity by clear and convincing evidence. Although post-*Alice*

3

courts appear to call into question whether a presumption of validity applies in this context, the Court will apply the presumption especially in light of the fact that the PTO issued four of the five patents-in-suit after the Supreme Court decided *Alice*. The Court will not, however, consider the expert affidavit offered by plaintiff as evidentiary matters outside of the complaint are not to be considered by a Court in addressing a motion under Rule 12. With these standards in mind, the Court turns to defendant's invalidity argument.[2]

2. *Alice*

Defendant asks that the Court declare the patents at issue invalid because they are drawn to an abstract idea. Pursuant to 35 U.S.C. § 101, "[w]hoever invents or discovers any new and useful process, machine, manufacture, or composition of matter, or any new and useful improvement thereof, may obtain a patent therefore...." Section 101 is limited, however, and does not cover "laws of nature, natural phenomena, and abstract ideas." *Alice*, 134 S.Ct. at 2354. In "applying the § 101 exception, we must distinguish between patents that claim the 'building block[s]' of human ingenuity and those that integrate the building blocks into something more." *Id*. (*Citing Mayo Collaborative Services, v. Prometheus Laboratories, Inc.*, 132 S.Ct. 1289, 1303 (2012)).

In *Alice*, the Supreme Court employed a two-part test "for distinguishing patents that

---

[2] Plaintiff relies heavily on the Court's decision in *Progressive Cas. Ins. Co. v. Safeco Ins. Co.*, in which this Court determined that invalidity should be addressed after claim construction. As an initial matter, the plaintiff in *Progressive* argued that claim construction was necessary for a resolution of the matter. Moreover, the Court decided that issue long before the wave of invalidity arguments made after recent Supreme Court and Federal Circuit decisions. Invalidity arguments based on patent-eligibility are now routinely addressed at the 12(b)(6) stage.

claim laws of nature, natural phenomena, and abstract ideas from those that claim patent-eligible applications of those concepts." *Id*. at 2355. First, the court must determine "whether the claims at issue are directed at a patent-ineligible concept." If the claims are so construed, the Courts must proceed to step two, which involves a determination as to whether the patent contains an "inventive concept," which is described as "an element or combination of elements that is sufficient to ensure that the patent in practice amounts to significantly more than a patent upon the ineligible concept itself." *Id*. (Internal citations and quotations omitted).

        A. Patent-ineligible concept

Generally speaking, this prong addresses whether the patent is directed to an "abstract" idea because there is a longstanding rule that "an idea itself is not patentable." *Id*. (Citations and quotations omitted). For this reason, patents describing algorithms and other mathematical formulas are invalid. In addition, patents involving general conceptual ideas are not patentable. *See, e.g., Alice,* 134 S.Ct. 2347 (patent directed at abstract idea of "intermediated settlement") *Bilski v. Kappos*, 561 U.S. 593 (2010)(patent involved abstract idea of hedging); *Ultramerical, Inc. v. Hulu*, LLC, 772 F.3d 709 (Fed. Cir. 2014)(patent directed at the "use of an advertisement as a currency exchange" constituted abstract idea); *Wireless Media Innovations, LLC v. Maher Terminals*, LLC, 2015 WL 1810378 (D.N.J. April 20, 2015)(the "monitoring locations, movement, and load status of shipping containers within a container-receiving yard, and storing, reporting, and communicating this information" constitutes an "abstract idea.").

Here, defendant claims that the patents involve the abstract idea of tracking freight. According to defendant, the patents involve basic concepts like "(1) receiving a request for the location of the freight; (2) asking the truck in possession of that freight where it is; and (3)

reporting the location of the truck." Defendant argues that the claims simply "use" a computer to accomplish these tasks. Because the claims constitute nothing more than a "method of organizing prior-existing, basic human activity," they are directed at an abstract idea.

In response, plaintiff argues that defendant does not accurately describe the patent. According to plaintiff, the patent does not "ask the truck" for its location. Rather, the freight is located through an indirect communication with a communication provider. Plaintiff argues that the patent is not directed to the general idea of tracking freight, but rather a specific way of tracking freight.

Upon review, the Court finds that the patents-in-suit are directed to the abstract idea of tracking freight. "Under step one of *Mayo/Alice*, the claims are considered in their entirety to ascertain whether their character as a whole is directed to excluded subject matter." *Internet Patents Corp. v. Active Network, Inc.*, 790 F.3d 1343, 1346 (Fed. Cir. 2015). In determining whether an idea is abstract, courts are to ask "what the claim is trying to achieve, instead of examining the point of novelty." *Enfish LLC v. Microsoft Corp.*, 56 F.Supp.3d 1167 (C.D. Cal. Nov. 3, 2014)(*citing Diamond v. Diehr*, 450 U.S. 175 (1981)). As such, "[c]ourts should recite a claim's purpose at a reasonably high level of generality. Step one is sort of a 'quick look' test, the purpose of which is to identify a risk of preemption and ineligibility." *Id*. Here, the claim discloses nothing more than a process for tracking freight, including monitoring, locating, and communicating regarding the location of the freight. These ideas are all abstract in and of themselves. *See, Wireless Media Innovations, LLC v. Maher Terminals*, LLC, —F.Supp.3d— , 2015 WL 1810378 (D. N.J. April 20, 2015)(process for tracking freight is an abstract idea).

Plaintiff argues that *Wireless Media* is distinguishable. According to plaintiff, the PTO

issued the patents in *Wireless Media* before the Supreme Court's decision in *Alice*. Contrary to plaintiff's argument, the fact that the PTO may have considered *Alice*-based guidelines before issuing the patents-in-suit does not *mandate* a finding that the patents are valid. Nor does the fact that *Wireless Media* involved a "local, closed, single-channel, discrete environment" as opposed to a "open system for multi-channel, real-time tracking of vehicles and freight nationwide" render the subject matter of the patents-in-suit something other than an abstract idea. Although plaintiff notes the difference, plaintiff fails to offer any explanation as to why this fact is relevant to this issue.

Plaintiff relies on *DDR Holdings, LLC v. Hotels.com L.P.*, 773 F.3d 1245 (Fed. Cir. 2014) in support of its position that the subject matter is not directed to an abstract idea. In *DDR Holdings*, the court examined a patent comprising "systems and methods of generating a composite web page that combines certain visual elements of a 'host' website with the content of a third-party merchant." *Id*. at 1248. In layman's terms, it appears that the patent allowed an internet retailer to publish content from a third-party retailer in order to avoid the situation in which a user clicks on an advertisement and is redirected away from the original retailer's site. The Federal Circuit concluded that the patent passed muster under Section 101 because it was "necessarily rooted in computer technology to overcome a problem specifically arising in the realm of computer networks." *Id*. at 1257. Although the court began its analysis by noting that the subject matter at issue involved a "challenge particular to the internet" that impliedly is not abstract, the court ultimately determined that "under any characterization of the abstract idea, the [ ] patent's claims satisfy *Mayo/Alice* step two." *Id*. Thus, the Court does not find that *DDR Holdings* controls with regard to step one of *Alice*.

7

Plaintiff also cites *Messaging Gateway Solutions, LLC v. Amdocs, Inc.*, 2015 WL 1744343 (D. Del. April 15, 2015).  That case, however, actually supports defendant's position.  Although ultimately the court determined that the patent contains an inventive concept at step two, the court found that a patent encompassing a "method of using a computer system to facilitate two-way communication between a mobile device and an Internet server" is directed at an abstract idea for purposes of step one.  *See also, Content Extraction and Transmission LLC v. Wells Fargo Bank, N.A.,* 776 F.3d 1343 (Fed. Cir. 2014)(method patent directed at the extraction of data from hard copy documents, recognition of specific data, and storage of the data is directed at abstract idea); *Cyberfone Systems, LLC v. CNN Interactive Group, Inc.,* 558 Fed. Appx. 988 (Fed. Cir. 2014)(method patent whose steps require obtaining data, "exploding" data into parts, and sending data to different destinations directed at abstract concept); *MicroStrategy, Inc. v. Apttus Corp.*, 2015 WL 4425828,  —F.Supp.3d— (E.D. Va. July 17, 2015)(patents for intelligent server system, method and system for providing business intelligence web content, and system and method for remote manipulation for analytic reports all directed to abstract ideas); *Market Track, LLC v. Efficient Collaborative Retail Marketing, LLC*, 2015 WL 3637740 (N.D. Ill. June 12, 2015)(method patent directed at creating output files from images did not satisfy part one of the *Alice* test).

In sum, the Court finds that the patent is directed at a method for tracking freight, which is an abstract concept.  Having so concluded, the Court now turns to step two of the *Alice* test.

### B.  Inventive concept

At step two, this Court must determine whether the elements of the claim contain an "inventive concept sufficient to transform the claimed abstract idea into a patent-eligible

application." In other words, the Court must determine whether the claim includes "additional features" such that the claim is "more than a drafting effort designed to monopolize the abstract idea." *Alice*, 134 S.Ct. at 2357 (citations and quotations omitted). The "additional features" must be more than 'well-understood, routine, conventional activity.'" *Ultramerical, Inc. v. Hulu, Inc.*, 772 F.3d 709, 715 (Fed. Cir. 2014)(*quoting Mayo Collaborative Services v. Prometheus Labs., Inc.*, 132 S.Ct. 1289, 1298 (2012)). Adding the words "apply it" or the mere introduction of a computer used to implement the abstract idea is insufficient to satisfy *Alice*'s second prong.

Plaintiff points to three "inventive concepts" that it claims are present in the patents-in-suit. According to plaintiff, the patents include the inventive concept of "correlating the location information of a communications device with the location of freight or a vehicle." Plaintiff claims that this provides a technical solution to a technical problem, namely "how to monitor the location of freight or vehicle by technical means other than a dedicated GPS receiver installed in the vehicle." According to plaintiff, this is a technical solution because it allows the tracking of freight without the use of a dedicated GPS receiver and instead discerns the location through a location information provider and correlates the device's location to that of the freight or vehicle.

In addition, the plaintiff argues that patents are inventive because they obtain location information through an intermediary and not directly from the communication device itself. Plaintiff argues that this second inventive concept further reduces reliance on GPS-based information in order to determine freight location.

According to plaintiff, the patents-in-suit contain a third inventive concept. Plaintiff points out that claim 1 of the '943 patent provides a "signal including data that prompts an

9

automated message to be communicated to a use of the communications device" and a "signal including data indicative of consent from the user" regarding the location of the device. According to plaintiff, this solves the technical problem of obtaining consent for location information from the owner of the device. Plaintiff claims that use of a manul or automatic system to call each user individually in order to obtain consent would be prohibitively inconvenient. Plaintiff claims that this is an inventive concept that is "tethered to the technology that created the problem" and is therefore akin to *DDR Holdings*.

As an initial matter, the Court agrees with defendant that plaintiff's first proposed inventive concept amounts to the correlation of information. "[C]orrelating" information, however, does not add an inventive concept. Correlating simply connotes the ascertaining of a relationship between two pieces of information. Here, plaintiff does not profess to have invented the ability to locate freight through the use of signals. Rather, the patents-in-suit simply instruct that a computer use preexisting technology to implement the correlation. This type of use of data, however, involves only the conventional use of a computer. Further, the Court agrees with defendant that plaintiff's proposed technological improvement is lacking in the claim language itself. According to plaintiff, the patents-in-suit solve the technical problem of obtaining location information by means other than use of a dedicated GPS receiver and further allows for an "open" as opposed to a "closed" system. But, as defendant points out, plaintiff fails to point to language in the claims demonstrating that its patents would not apply to a closed system. And, again, plaintiff is not claiming that it invented these other methods of tracking freight.

The same holds true for plaintiff's second and third proposed inventive concepts, *i.e.*, obtaining location information through an intermediary and obtaining consent. Plaintiff argues

that these concepts further reduce reliance on GPS-based information in order to determine freight location and solve the "unique" problem of obtaining consent.  The claim language, however, accomplishes these tasks through the ordinary use of a computer that "transmits" and "receives" data from a communication device and the  "location information provider."  Again, transmitting and receiving data are basic and generic computer functions and these claims do not solve any problem "tethered to the technology that created the problem." *See*, *DDR Holdings, LLC v. Hotels.com L.P.*, 773 F.3d 1245 (Fed. Cir. 2014).  In fact, as defendant notes, the patents-in-suit incorporate pre-existing industry standards for notice and consent in relation to the use of tracking systems.  As such, the obtaining of consent was already known in the industry before the issuance of the patents-in-suit.  The patents simply use a computer to "transmit" and "receive" data in order to accomplish this task.  These limitations –either individually or as an ordered combination– do not transform the abstract idea into a patent-eligible application.

The overall gist of plaintiff's argument is that the concept of using a third-party intermediary to locate freight and obtain consent is an inventive concept because this method has not been used in the freight tracking industry.  But, "[e]ven if some steps in the claims 'were not previously employed in this art is not enough–standing alone–to confer patent eligibility upon the claims at issue.'"  *Essocite, Inc. V. Clickbooth.com, LLC*, 2015 WL 1428919 (C.D. Cal. Feb. 11, 2015)(*quoting Ultramerical*, 772 F.3d at 716)).  Here, plaintiff offers nothing "in addition" to the argument that these steps have not been used in the industry.  This is insufficient to confer patent eligibility.

Plaintiff's reliance on *DDR Holdings* is further misplaced.   As set forth above, the patent in *DDR Holdings* was patent eligible because it contained solution "necessarily rooted in

11

computer technology in order to overcome a problem specifically arising in the realm of computer networks." Plaintiff attempts to compare its patent to *DDR Holdings* on the basis that requiring consent to determine location is a "new" problem that is specific to the technology of advanced communication devices. This Court disagrees. As an initial matter, asking an individual permission to ascertain location is not a solution to a technological problem. Rather, long before privacy concerns arose with the use of GPS and other types of cellular locators, humans were able to inquire as to another individual's location through the use of a telephone. The caller could ask for a location and the respondent could either provide or decline to provide his location. Plaintiff's patent simply uses a computer to perform this function. As such, the Court finds that using a computer to ask for permission before using a locating device does not solve a technological problem. Nor does the problem identified by plaintiff "specifically aris[e] in the realm of computer networks."  Thus, the Court disagrees that the patent at issue in *DDR Holdings* is similar to the patents-in-suit.

Plaintiff also relies on *Messaging Gateway*, 2015 WL 1744343, in support of its position that the patents-in-suit are valid. The patent in *Messaging Gateway* was directed at a method of using a computer system to facilitate two-way communication between a mobile device and an Internet server." The court found the patent analogous to *DDR Holdings*. Specifically, the court found that the patent describes an interaction between a mobile phone system and a computer, which overrides conventional practice. The court noted that "conventional" phones could not send SMS text messages to computers. Therefore, the court reasoned, the patent contained an inventive concept because it was "tethered to the technology that created the problem." The Court finds that *Messaging Gateway* is inapposite because, as set forth above, plaintiff does not

12

establish that the patent's purported inventive concepts solve a problem rooted in the technology that created the problem.

Although not raised by the parties, the Court finds further support for its conclusion in the fact that the claims do not survive the "machine or transformation test." The "machine or transformation" test looks to whether a process is (1) "tied to a particular machine or apparatus or (2) transforms a particular article into a different state or thing." *Ultramerical*, 772 F.3d at 716. Although not dispositive, the "machine or transformation" test is nonetheless a "useful and important clue, an investigative tool, for determining whether some claimed inventions are processes under § 101." *Bilski v. Kappos*, 561 U.S. 593, 604 (2010). *See also, Mayo*, 132 S.Ct. at 1303. Here, the patents are not tied to any particular machine or apparatus. Rather, they require only a general purpose computer. The patents also fail the second prong of the "machine or transformation test" because implementation of the method or system results in no transformation.

Plaintiff also argues that its patents do not preempt the field of "tracking freight" and thus the concerns of the *Mayo* court do not apply. Again, this Court disagrees. Although the patents-in-suit do not entirely foreclose all tracking of freight, the steps in the claimed invention do involve "well-understood, routine, conventional activity." *Mayo*, 132 S.Ct. at 1294. Thus, "upholding the patents would risk disproportionately tying up the use of the underlying" conventional steps. *Id*. Accordingly, plaintiffs' argument is not well-taken.[3]

---

[3] Plaintiff repeatedly argues that the Reasons for Allowance issued with respect to the patents-in-suit note that the patent is distinguishable from prior art. Therefore, plaintiff claims that the patents are directed at patent-eligible subject matter. The Court disagrees. Nothing in the Reasons for Allowance dictate a finding that these concepts are inventive on the issue of patent-eligible

C. System claims

Having concluded that the method claims are invalid under Section 101, the Court finds that, for the same reasons, the system claims are invalid. In substance, the method and system claims do not differ. *See, Alice Corp.*, 134 S.Ct. at 2360.

**CONCLUSION**

For the foregoing reasons, Defendant FourKites, Inc.'s Motion to Dismiss First Amended Complaint for Failure to State a Claim Upon Which Relief Can Be Granted as a Matter of Law (Doc. 18) is GRANTED.

IT IS SO ORDERED.

      /s/ Patricia A. Gaughan
PATRICIA A. GAUGHAN
United States District Judge

Dated: 11/6/15

---

subject matter.  Nor is the guidance put forth by the PTO conclusive on the issue of patent-eligible subject matter.  Regardless, other than a blanket statement that the Examiner presumably applied the guidance, plaintiff offers no analysis on the issue.